

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

Adam W. Poff
P 302.571.6642
F 302.576.3326
APOFF@ycst.com

December 21, 2012

**VIA CM/ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
United States District Court
Federal Building
844 North King Street
Wilmington, DE  19801

Re:  *Cadence Pharms., Inc., et al. v. Paddock Labs., Inc., et al.*, C.A. No. 11-733 (LPS)

Dear Judge Stark:

Defendants Exela Pharma Sciences, LLC, Exela PharmSci, Inc., and Exela Holdings, Inc. (collectively "Exela") hereby respond to Plaintiff Cadence Pharmaceuticals' ("Cadence's") letter brief seeking a Protective Order to preclude the deposition of Mr. Ted Schroeder.  For the reasons set forth, Cadence's request should be denied, and the deposition should be allowed to proceed as noticed.

**I.   Cadence Has Failed To Meet Its Burden of Demonstrating the Good Cause Necessary To Justify the Extraordinary Relief of Quashing Mr. Schroeder's Deposition.**

As Your Honor recently observed in denying a similar request for a protective order, "'[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.'" *MetLife Investors USA Ins. Co. v. Star Lite Brokerage, Inc.*, C.A. No. 11-911-LPS, 2012 WL 4344606, at *2 (D. Del. Sept. 21, 2012) (quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).

To warrant entitlement to this extraordinary remedy, a movant must demonstrate "good cause," which is "established 'on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. *The injury must be shown with specificity*.'" *Appleseed's Intermediate Holdings, LLC v. Farmer*, 470 B.R. 289, 304 (2012) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (emphasis added)).  As the Third Circuit has observed:

> Rule 26(c) places the burden of persuasion on the party seeking the protective order.  To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  Moreover, the harm must be

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
December 21, 2012
Page 2

significant, not a mere trifle.

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (citations omitted); *accord Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999) ("Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order. The litigant seeking the protective order must articulate the injury with specificity." (citation omitted)). Self-serving assertions of a lack of knowledge are insufficient to evade a deposition. *Holm v. Pollack*, No. CIV. A. 00-CV-2893, 2001 WL 1257728, at *3 (E.D. Pa. Oct. 19, 2001) ("Defendant's conclusory and self-serving assessment of the knowledge of a potential witness does not impair the discoverability of that knowledge, however slight."); *accord Malat v. Potak*, No. Civ. A. 79-3138, 1999 WL 395119, at *1 (E.D. Pa. May 21, 1999) (The court does not think it unreasonable for the defendants to not accept, without questioning, Mrs. Malat's representation that she has no knowledge of the facts of the case.").

In this case, Cadence failed to identify any "clearly defined and serious injury" that would result if Mr. Schroeder's deposition is permitted to proceed. While Cadence submitted a declaration from Mr. Schroeder, Mr. Schroeder did not even attempt to assert that a deposition would burden or harass him in any way—much less make such a showing with the required specificity. Indeed, Exela noticed the deposition for San Diego, California, where Cadence's offices are located, and Exela is willing to limit its questioning time to four hours to minimize any perceived inconvenience to Mr. Schroeder. Given Cadence's failure to satisfy its burden, its request should be denied on this basis alone.[1]

## II.     Mr. Schroeder's Testimony Is Relevant To Key Issues in this Case.

Rather than fulfill its heavy burden, Cadence improperly attempts to shift the burden on Exela to show why the depositions should proceed, asserting that Mr. Schroeder lacks independent knowledge of issues relevant to this proceeding. Contrary to Cadence's assertions, however, Mr. Schroeder has direct and personal knowledge regarding multiple issues in this lawsuit, and he has made explicit statements regarding them that Exela is entitled to explore, as demonstrated below. As such, he is uniquely positioned to provide discovery regarding the basis for the statements that he himself has made.

*First*, Cadence explicitly contends that "secondary considerations of non-obviousness" support the validity of the patents-in-suit and relies on licensing by others to show "[i]ndustry acquiescence." *See* Ex. A hereto at 12-16 (Cadence's Resps. and Objections to Exela's Second

---

[1] Cadence's reliance on *Tulip Computers International B.V. v. Dell Computer Corp.*, 210 F.R.D. 100 (D. Del. 2002), is misplaced, as the court actually ordered the deposition of Mr. Dell to go forward and denied Dell's motion for reconsideration. *Id.* at 101-02. The court made clear that exploring a variety of addressed topics with Mr. Dell, including "conversations or contacts with" a relevant individual and "the extent of [Mr. Dell's involvement and his knowledge regarding defendant's method and strategy of developing the technology" at issue were all permissible topics. *Id.* at 102.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Leonard P. Stark
December 21, 2012
Page 3

Set of Interrogs. (Nos. 4-5) (Aug. 16, 2012)). Mr. Schroeder has made statements regarding the asserted non-obviousness of the patent-in-suit and Cadence's licensing activities that Exela is entitled to explore. For example, he stated in a November 28, 2012 press release that the settlement between Cadence and Perrigo "validates our confidence in the integrity of the patents covering OFIRMEV." Ex. B. He also made statements in a November 28 presentation regarding the purported failure by others to develop the technology embodied in the patents-in-suit. *See* Ex. C ("[M]any, many companies tried over decades to crack that code including J & J that tried for uh 30 plus years to get a stable IV formulation and weren't able to do it.") (11/28/12 Piper Jaffray Presentation). Indeed, there is no better witness with whom to explore these statements than the very person who made them, who also happens to be the founder of the company. He thus is uniquely suited to address the manner in which Cadence has chosen to assert and defend the patents-in-suit vis-à-vis its competitors.

*Second*, Mr. Schroeder has made statements that are relevant to Exela's patent misuse defense. Specifically, Mr. Schroeder has asserted that it is impossible to design around the patent-in-suit, which the Federal Circuit has made clear can support a patent misuse defense. *See* Ex. C ("[T]hat's the strength of uh what's known as the '218 patent. . . . And the patent is so broad there really are no other choices.") (11/28/12 Piper Jaffray Presentation); *Zenith Elecs. Corp. v. Excex, Inc.*, 182 F.3d 1340, 1344 (Fed. Cir. 1999) ("Exclusive-source claims blow a greater chill on competition and are less vital to the patentee's effort to vigorously protect his legitimate interests.").[2]

For the foregoing reasons, the Court should deny Cadence's attempt to suppress discovery regarding its CEO's directly relevant statements about the patents-in-suit.

Respectfully submitted,

*/s/ Adam W. Poff*

Adam W. Poff (No. 3990)

cc: Counsel of Record (via CM/ECF)
    Clerk of the Court (via hand delivery)

01:13047514.1

---

[2] Cadence argues that the Zenith case is irrelevant because there is no product on the market in this Hatch-Waxman litigation. Letter from J. Tigan to J. Stark at 3 n.2 (Dec. 20, 2012). Cadence ignores, however, that these statements were made to the investor community and industry to tout Cadence's purported unassailable patent position and that they have the foreseeable effect of deterring Exela's potential partners from working with Exela to develop a competing product. Exela is entitled to explore with Mr. Schroeder exactly what he said, other similar statements he may have made, and his basis for and intent in making these claims. No other witness is as uniquely situated to explain Mr. Schroeder's own statements to the investor community than Mr. Schroeder himself.